## Smith *v.* Roberts, administrator.

Hill, J.　1. An administrator obtained an order to sell the lands of his intestate, and after duly advertising them they were sold at public outcry, as required by the order.　The land was sold by lots.　One of the lots (No. 3) was bid in by S. for the sum of $1,510.　S. failed and refused to pay the administrator the amount of his bid, claiming that he bid off lot No. 3 by mistake, intending to bid on lot No. 1, which was also advertised, and that the amount he bid on lot No. 3 was at least $500 more than its true value.　The administrator subsequently (within 60 days) readvertised lot No. 3 for sale, and it was bought by W. for the sum of $1,050.　Whereupon the administrator brought suit against S. for the sum of $470.50, the difference between the bids for lot No. 3 at the two sales, plus the additional expense incurred in readvertising and reselling.　On the trial of the case the court ruled out the following question asked a witness for the movant, and the answer:　Q. "Did that lot [No. 3] then [January, 1909] bring its fair market value at the last sale?"　A. "Yes, and more too."　*Held,* that this ruling was not error for the reason assigned, viz.: that an administrator can never be held responsible, as a matter of law, for an amount greater than the fair market value of the property sold or disposed of; and that if the administrator did obtain the true market value of the land at the last sale, then in no event could the defendant be held responsible for the difference in the price of the land at the first and last sale.　Nor was the testimony admissible "because it showed conclusively that movant did make an honest mistake in that he would not have bid at all on lot No. 3, and it should have been allowed to go to the jury to rebut the testimony of the administrator, who swore that lot No. 3 did not bring its fair market value at the last sale."

(*a*) The measure of damages in such a case is the difference between the price the land brought at the first sale and the price it brought at the second sale, together with additional costs incurred in reselling; and it is immaterial whether or not the land brought its value on the second sale.

2. The court charged the jury as follows:　"I also charge you this principle of law, as applicable to this case:　If you are satisfied by a preponderance of the testimony in this case that on the first Tuesday in November, 1908, the defendant, at the time he bid for certain land exposed for sale by the administrator, belonging to the estate of Mr. Wood, if at that time he was laboring under an honest mistake that he was bidding on lot No. 1, when really he was bidding on lot No. 3, if the

administrator, or the auctioneer who was representing the administrator that day, had knowledge of the fact that the defendant in this case was under an honest mistake as to what land he was buying, then they were under the obligation, if they knew the defendant was laboring under an honest mistake, to place him on notice of the fact as to what lot was really being sold. And that you may clearly understand the court on that question in the case, if Mr. Roberts, the administrator in this case, or if the auctioneer knew before this lot was knocked off to the defendant on the first Tuesday in November, 1908, that the defendant was bidding on the property under an honest mistake that he was buying lot No. 1, when he was really buying lot No. 3, if the administrator or the auctioneer had knowledge of that fact, under the law they would be bound to inform the defendant as to his mistake. But as to whether or not the administrator in this case, as to whether or not the auctioneer in this case, had knowledge of the fact the defendant was laboring under an honest mistake, is entirely a question of fact for you to pass upon and settle by your verdict. If they did not have knowledge of the fact before the lot was knocked off to Mr. Smith, the defendant in this case, if it was a fact that the defendant was laboring under an honest mistake, in law they were under no obligation whatever to notify him of his mistake." After so charging, the court further instructed the jury as follows: "If they did have knowledge before the lot was finally knocked off to Mr. Smith, the defendant in this case, in law it was their duty to give him notice of the mistake he was laboring under, provided Mr. Smith was not negligent in exercising ordinary care and diligence in finding out what lot was being sold. In other words, it was the duty of the defendant in this case (and is the duty of every man in the transaction of any kind of business) to exercise ordinary care and diligence to ascertain whether or not he was making a bid under a mistake. If Mr. Smith in this case did not exercise ordinary care and diligence to find out his mistake, he would be bound by it whether it was so induced by the auctioneer or the administrator or not." That portion of the charge which is contained in the three sentences last quoted is erroneous; and as there was evidence from which the jury might have found that the administrator or auctioneer knew that the plaintiff in error was bidding on the wrong lot, the error was harmful to him, requiring a new trial.

*Judgment reversed. All the Justices concur.*
JUNE 15, 1914.

Complaint. Before Judge Park. Jones superior court. February 1, 1913.

*Johnson & Johnson* and *J. B. Jackson,* for plaintiff in error.
*Hardeman, Jones, Park & Johnston* and *E. T. Dumas Jr.,* contra.